## 74052. DAWSON v. THE STATE.
### (357 SE2d 891)

POPE, Judge.

Defendant, Albert Louis Dawson, his wife, Phyllis H. Dawson, and Mitchell Ray Park were indicted on 3 counts of violating the Georgia Controlled Substances Act (possession of marijuana, cocaine and methamphetamine with intent to distribute). Park entered a plea of guilty to the charges and defendant and his wife were jointly tried. Both defendant and his wife made a motion for directed verdict of acquittal at the close of the State's case; the trial court granted the motion as to defendant's wife but denied defendant's motion. Defendant was convicted by a jury on all 3 counts and appeals.

The evidence adduced at trial shows that on September 28, 1985, an informant of the Forsyth County Sheriff's Department made a "controlled buy" of marijuana from Park. Later that day, pursuant to a search warrant, certain officers of the department conducted a search of Park's mobile home and the surrounding premises. At the time of the search, defendant, his wife, their ten-year-old child and Park were in the mobile home. The search of the home yielded various quantities of marijuana, cocaine and methamphetamine, as well as drug paraphernalia and an arsenal of firearms. A search of defendant's pickup truck, which was parked on the premises, yielded no drugs; however a Smith and Wesson .357 caliber revolver and a special deputy's badge issued by Fulton County to defendant were recovered. (The badge had been cut into pieces and laminated back together). A .22 caliber revolver was found in defendant's wife's car, which was also parked on the premises.

Testimony of the officers conducting the search indicated that the smell of marijuana was pervasive when they arrived at the premises. The officers also testified that defendant was belligerent and displayed a hostile attitude. There was also testimony that defendant repeated several times that the officers didn't know who they were messing with, and that defendant tried to persuade them to let him and his wife go, and in return he would consent to drug testing and a search of their home.

Defendant gave a slightly different version of the events that transpired that day. Defendant testified that the officers conducting the search, particularly Officer Sims, were belligerent and that they used profanity in front of defendant's child. Defendant also testified that the officers offered to let him go if he would consent to a blood and polygraph test and let them search his house. Defendant testified that when he accepted the offer he was told to shut his mouth.

Defendant testified that he was at Park's home on the day of the search to help Park unload some furniture. He admitted to being at Park's home at the time the informant allegedly made the controlled buy from Park but testified that he took no part in the conversation between Park and the informant, which took place outside. (This testimony was corroborated by the informant.) Defendant also testified he had no actual knowledge that Park was selling contraband, although defendant intimated he suspected that might be the case. Defendant denied that any of the marijuana, cocaine or methamphetamine found during the search belonged to him.

Park testified that the marijuana, cocaine, methamphetamine, drug paraphernalia and weapons found in the trailer (with the exception of a sawed-off shotgun which Park testified belonged to his roommate) belonged to him and not to the defendant. When confronted on cross-examination with a prior inconsistent statement, Park indicated that some of the marijuana in the living room may have belonged to defendant and that defendant may have smoked marijuana earlier in the day on the day in question. However, Park maintained his testimony, which was not contradicted by his earlier statement, that the defendant was unaware of the existence of the cocaine and methamphetamine and had no knowledge of the drug buys, which Park testified were not made in defendant's presence.

1. Defendant first argues the State attempted to place his character in issue by attempting to enter evidence of other occurrences involving defendant without prior notice as required by Uniform Superior Court Rule 31 and after the trial court had granted defendant's motion in limine with respect to such evidence. We have carefully reviewed the record pertaining to this contention and, for the reasons stated hereinbelow, find no error.

In the first instance complained of, the record shows that al-

though the trial court denied defendant's motion for mistrial, it sustained defendant's objection to the State's question and offered curative instructions to the jury. "As we stated in *Holcomb v. State*, 130 Ga. App. 154, 155 (202 SE2d 529) (1973): 'Motions for mistrial are largely in the discretion of the trial judge . . . and, where the jury is properly instructed and the remark is not so flagrantly prejudicial as to violate the fair trial rights of the defendant, the court's discretion will not be overturned.' See also *Prater v. State*, 148 Ga. App. 831, 833 (253 SE2d 223) (1979). We do not consider the improper question by the prosecuting attorney so 'flagrantly prejudicial' as to require a mistrial. The question was not answered by the witness, so no prejudicial information (if there was any) was presented to the jury. As we do not believe the mere asking of the question involved would so prejudice the jury as to deprive [defendant] of his right to a fair trial, we hold that the trial [court] did not abuse [its] discretion in denying the motion for a mistrial." *Chatham v. State*, 155 Ga. App. 154, 157 (270 SE2d 274) (1980).

In the remaining instances complained of on appeal, the trial court sustained defendant's objections, but offered no curative instructions. The record shows, however, that no curative instructions were requested and that the trial court properly cautioned the State against continuing the improper examination of the witness. The record indicates that the witness did not answer the questions, and that the questions propounded were not so "flagrantly prejudicial" so as to mandate the granting of a mistrial. "In the absence of a demonstration that a mistrial was essential to preservation of a defendant's right to a fair trial, it is not an abuse of discretion to deny a motion for a mistrial, even where no curative instructions are given." *Little v. State*, 178 Ga. App. 268, 270 (342 SE2d 712) (1986). Under the circumstances of the present case, we find no error in the trial court's denial of defendant's motion for mistrial.

2. Defendant also enumerates as error the trial court's denial of his motion for a directed verdict of acquittal and argues the State failed to carry its burden of proof as to Counts 2 and 3 of the indictment (the cocaine and the methamphetamine charges). The State concedes that the evidence adduced at trial as to these offenses was circumstantial. "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis of guilt, save that of the guilt of the accused. As the State correctly asserts in its brief, the question of whether every other reasonable hypothesis has been excluded is generally a question for the jury. On the other hand, the trial court is authorized, as usual, to take the case from the jury and direct a verdict of acquittal if the State clearly fails to meet its burden. Should a trial court decline to direct the verdict and the

jury then finds the defendant guilty, we are obliged to review the evidence in a light most favorable to the jury verdict. However, we will not be blinded by the jury verdict when a reasonable hypothesis of innocence appears from the evidence or the lack thereof." (Citations and punctuation omitted.) *Muckle v. State*, 165 Ga. App. 873 (1) (303 SE2d 54) (1983).

A review of the record reveals the State presented no evidence of defendant's actual possession of either cocaine or methamphetamine; however, such a conclusion does not end our inquiry. " '(A) person who knowingly has direct physical control over a thing at a given time is in actual possession of it. A person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it. The law recognizes that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. . . .' *Thomas v. State*, 153 Ga. App. 686, 689 (266 SE2d 335) [(1980)]. . . With regard to defendant. . . , we find the evidence of constructive possession [as to the cocaine and methamphetamine is] lacking. 'It is well established that merely having been in the vicinity of contraband does not, without more, establish possession. (Cits.)' *Donaldson v. State*, 134 Ga. App. 755, 756 (216 SE2d 645) [(1975)]." *Blount v. State*, 181 Ga. App. 330, 332 (352 SE2d 220) (1986). Hence, we find a directed verdict of acquittal was demanded as a matter of law as to Counts 2 and 3 of the indictment and remand for sentencing not inconsistent with this holding. *Blount*, supra; *Shockley v. State*, 166 Ga. App. 182 (303 SE2d 519) (1983). Cf. *Camp v. State*, 181 Ga. App. 714 (4) (353 SE2d 832) (1987).

*Judgment affirmed in part and reversed in part. Birdsong, C. J., Banke, P. J., Carley, Sognier, and Benham, JJ. concur. Deen, P. J., McMurray, P. J., and Beasley, J., dissent.*

Deen, Presiding Judge, dissenting in part.

I must respectfully dissent as to the majority's finding that a directed verdict of acquittal was demanded as a matter of law as to Counts 2 and 3 of the indictment.

After conviction, all evidence must be construed to uphold the verdict. The State's theory was that the appellant acted together with another named Park in selling drugs out of the latter's trailer. Appellant was in the house approximately 36 hours while there was much traffic in and about the premises. Drug sales were made during this period. Viewing the evidence in its totality, such as the false law enforcement badge, scales, the artificial head of lettuce, the weapons, rolling trays, the marijuana and other drugs, and the smell of marijuana, a jury could find joint constructive possession of the substance found in the trailer.

While appellant contended that the alleged odor of marijuana was really the odor of five dogs living in the house, and that he was there moving furniture most of the time rather than possessing the drugs with the intent to distribute, I believe that a jury question was raised as to whether Park alone was guilty or whether appellant was a party to the crime of possession of the controlled substances found in the trailer. There is more here than being at the scene of the crime or, as alluded to in the majority opinion of "merely having been in the vicinity of contraband." I would affirm the judgment of the trial court in its entirety.

I am authorized to state that Presiding Judge McMurray and Judge Beasley join in this dissent.

DECIDED MAY 27, 1987.

*Martin B. Findley*, for appellant.
*Rafe Banks III, District Attorney, T. Russell McClelland II, Assistant District Attorney*, for appellee.