72875, 72876. BLOUNT v. THE STATE (two cases).
(352 SE2d 220)

McMURRAY, Presiding Judge.

Defendants, husband and wife, were accused, via indictment, of possessing marijuana with intent to distribute and trafficking in cocaine. Following a jury trial, defendants were convicted upon each charge. They were sentenced to serve 10 years, 5 in confinement and 5 on probation. Additionally, each defendant was fined $50,000. Defendants moved for a new trial and their motions were overruled by the trial court. Defendant husband appeals in Case No. 72875 and defendant wife appeals in Case No. 72876. *Held*:

1. Defendants were indicted on February 25, 1985. The indictment charged that on December 17, 1984, defendants unlawfully possessed marijuana with intent to distribute in violation of the Georgia Controlled Substances Act. It also accused defendants of knowingly and actually possessing "more than 28 grams of a mixture containing cocaine."

At the time of the offense and the indictment, OCGA § 16-13-31 read, in pertinent part: "Any person who knowingly sells, manufactures, delivers, or brings into this state or who is knowingly in actual possession of 28 grams or more of cocaine or of any mixture containing cocaine, as described in Schedule II, . . . commits the felony offense of trafficking in cocaine . . ." Thereafter, OCGA § 16-13-31 was repealed. A new OCGA § 16-13-31 was enacted in its place. Effective

July 1, 1985, the statute provided: "Any person who knowingly sells, manufactures, delivers, or brings into this state or who is knowingly in actual possession of 28 grams or more of cocaine as described in Schedule II . . . commits the felony offense of trafficking in cocaine. . . ." Ga. L. 1985, pp. 552, 553. Thus, the "mixture" language of the statute was omitted in the 1985 statute.

Defendants were tried in October 1985 after OCGA § 16-13-31 was amended. Relying upon *Gunn v. State*, 227 Ga. 786 (183 SE2d 389), they contend that the legislature put an end to the prosecution for trafficking in cocaine by possessing more than 28 grams of a mixture containing cocaine.

In *Robinson v. State*, 256 Ga. 564, 565 (350 SE2d 464), the Supreme Court considered the effect of the repeal of OCGA § 16-13-31 (after an indictment but prior to trial and conviction) upon a prosecution for trafficking in cocaine by possessing more than 28 grams of a mixture containing cocaine.

It held: "*Gunn v. State*, supra, is the law in Georgia. When a statute making described conduct a crime is repealed prior to final judgment on a conviction, the repeal ends the prosecution if the legislature has not provided otherwise in [a] saving clause. Here the legislature repealed the old law and enacted in its place a new law without including a saving clause. Thus, the appellant's conduct was no longer defined by the legislature as trafficking in cocaine, therefore, the prosecution in this case was at an end before the trial."

It follows that the prosecution of defendants for trafficking in cocaine by possessing more than 28 grams of a "mixture" containing cocaine was not authorized. The trafficking in cocaine convictions must be reversed. *Robinson v. State*, supra.

2. Defendants assert the evidence is insufficient to allow a rational jury to find them guilty of the crime of possessing marijuana with intent to distribute. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). We agree that the evidence is not sufficient to enable a rational factfinder to find defendant husband guilty beyond a reasonable doubt. On the other hand, we find the evidence was sufficient to find defendant wife guilty beyond a reasonable doubt.

The evidence adduced at trial demonstrates the following: On December 17, 1984, a search warrant was executed at the home of Gerald and Karen Haynes in Warner Robins. The warrant authorized the search of the Hayneses' premises, including the curtilage. Defendants were visiting the Hayneses on the day the search took place. When the police entered the house, they found defendant wife and Mrs. Haynes sitting on a couch in the living room. Defendant husband was in a bedroom in the rear of the house and Mr. Haynes was in the hallway.

As the search progressed, a large quantity of marijuana was

seized in one of the bedrooms. The police searched a pocketbook which they found in the living room. The pocketbook was located about 10 or 12 feet from the couch upon which defendant wife and Mrs. Haynes sat. The officers made no inquiry as to whom the pocketbook belonged before searching it and neither defendant wife nor Mrs. Haynes claimed the pocketbook as her own. The pocketbook contained a small quantity of marijuana, a loaded .38 caliber revolver, a razor blade and a straw. Identification found inside the purse showed that it belonged to defendant wife.

A Cadillac titled in the name of the defendant wife was parked in the Hayneses' driveway. An officer asked who owned the Cadillac and defendant wife responded that she did. The officer obtained the keys to the Cadillac from either the pocketbook or defendant wife and he began to search it. In the trunk of the automobile, the officer found a suitcase which contained a plastic bag holding a large quantity of marijuana. He also found men's and women's clothing, a set of reloading scales, empty ziplock plastic bags and a "fake" oil can. Inside the oil can were six plastic bags filled with cocaine.

The foregoing evidence was presented entirely by the prosecution. Neither defendant husband nor defendant wife took the stand to testify and no evidence was introduced on their behalf.

"[A] person who knowingly has direct physical control over a thing at a given time is in actual possession of it. A person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it. The law recognizes that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons shared actual or constructive possession of a thing, possession is joint." *Thomas v. State*, 153 Ga. App. 686, 689 (266 SE2d 335).

A review of the evidence demonstrates that defendant husband did not have actual possession of contraband. Thus, we must determine whether defendant husband was in constructive possession of the contraband. In making this determination, we must keep in mind the principle that circumstantial evidence must be consistent with the hypothesis of guilt and exclude every other reasonable hypothesis. OCGA § 24-4-6.

With regard to defendant husband, we find the evidence of constructive possession lacking. "It is well established that merely having been in the vicinity of contraband does not, without more, establish possession. [Cits.]" *Donaldson v. State*, 134 Ga. App. 755, 756 (216 SE2d 645). Defendant was not shown to be in the immediate presence of any of the contraband found at the time of the execution of the warrant. His mere presence in the Hayneses' house *cannot* be said to demonstrate possession of the contraband found in his wife's automo-

bile. *Mitchell v. State*, 150 Ga. App. 44, 46 (2) (256 SE2d 652). Compare *Clark v. State*, 146 Ga. App. 697 (1) (247 SE2d 221). Likewise, the fact that defendants were husband and wife cannot be said to establish defendant husband's connection to the contraband. See *Knighton v. State*, 248 Ga. 199, 200 (2) (282 SE2d 102). That men's clothing was found in the trunk of defendant wife's automobile does not establish possession either. (In this connection, we observe that the prosecution did not demonstrate whether the clothes belonged to, or even fit, defendant husband.) Nor can it be said that the money found on defendant husband's person ($587) demonstrated a connection to the contraband. In sum, defendant was not connected to the contraband discovered in his wife's automobile. Compare *Garvey v. State*, 176 Ga. App. 268, 274 (6) (335 SE2d 640). The evidence was sufficient to raise a *suspicion* of guilt on the part of defendant husband. But the evidence was not sufficient to authorize a jury to convict defendant husband of possession of marijuana with intent to distribute beyond a reasonable doubt. Accordingly, defendant husband's conviction must be reversed.

3. Defendant wife's ownership and control of her automobile gave rise to a presumption, in the absence of contrary evidence, that the marijuana found in the automobile was hers and in her possession. *Moore v. State*, 155 Ga. App. 149, 150 (270 SE2d 339). Evidence of equal access to the marijuana would have been sufficient to overcome the presumption. But evidence of equal access was lacking. In view of defendant wife's ownership of the automobile in which the marijuana was found and the presence of marijuana and drug paraphernalia in her pocketbook, we find that a rational trier of fact could find defendant wife guilty of possessing marijuana with intent to distribute beyond a reasonable doubt. *Moore v. State*, 155 Ga. App. 149, 150, supra. Defendant wife's contention that the evidence is insufficient to authorize the jury's verdict is without merit.

4. Defendant wife asserts the trial court erred in denying her motion to suppress the evidence found in her pocketbook and automobile. In this regard, defendant wife argues that she was a mere visitor at the Hayneses' residence and that, therefore, neither her pocketbook nor her automobile were properly searched pursuant to the warrant which the police executed. See *Hawkins v. State*, 165 Ga. App. 278 (300 SE2d 224).

"The courts of this state have often held that searches of persons not named in a search warrant but found on the premises to be searched are illegal absent independent justification for a personal search (*Jones v. State*, 126 Ga. App. 841 (192 SE2d 171); see also *United States v. Di Re*, 332 U. S. 581, 587 (68 SC 222, 92 LE 210)), but they have not been called upon to define a person's 'boundaries' for purposes of his immunity from such searches. Searches of a paper

bag carried under a person's arm (*Brown v. State*, [133 Ga. App. 500 (3) (211 SE2d 438)]), and of a plastic bag in a person's pocket (*Willis v. State*, 122 Ga. App. 455 (177 SE2d 487)) have been treated as searches of the person." *Hayes v. State*, 141 Ga. App. 706, 707 (234 SE2d 360). Accord *Wyatt v. State*, 151 Ga. App. 207, 208 (259 SE2d 199).

" 'An analysis which focuses entirely on whether a belonging is in the physical possession of a non-resident visitor to premises searchable under a warrant, while it serves to protect the zone of privacy around the visitor's person, ignores the substantial interest the visitor has in the privacy of all his possessions, wherever located. To overcome that interest, the federal and state constitutions require a warrant supported by probable cause. And a warrant to search premises only cannot logically meet this requirement since by hypothesis there is no way to know, at the time the warrant is issued, whether the visitor or his possessions will even be present at the premises when the warrant is executed, let alone whether his possessions are likely to contain the items listed in the warrant. Of course, the rule is otherwise when the warrant is used as a basis to search the belongings of a resident of the suspect locale . . . for the resident's control over the premises provides a nexus between (him) and his belongings which is absent in connection with the possessions of a non-resident visitor. (Cits.) On the other hand, the police cannot realistically be expected to avoid searching the property of a mere visitor to the premises unless they are aware of its ownership. Absent a requirement of such awareness, the effective execution of a warrant to search a place would be impossible since the police could never be sure that a plausible repository for items named in the warrant belongs to a resident, and hence is searchable, or to a non-resident, and hence is not searchable. Because of this, without notice of some sort of the ownership of a belonging, the police are entitled to assume that all objects within premises lawfully subject to search under a warrant are part of those premises for the purpose of executing the warrant.' *State v. Nabarro*, 55 Hawaii 583, 587 (525 P2d 573) (1974). See *United States v. Micheli*, 487 F2d 429 (1 Cir. 1973). 'Whether the police had notice that they were searching the personal effects of a visitor to searched premises must be determined on the facts of each case . . .' " *Childers v. State*, 158 Ga. App. 613, 614 (281 SE2d 349).

With an eye upon the principles set forth in *Childers v. State*, 158 Ga. App. 613, supra, we scrutinize the search of defendant wife's pocketbook. It is clear that the police did not have notice or reason to believe they were searching the belonging of a person they had no authority to search. The pocketbook was located about 10 or 12 feet from two women. The police knew that one of the women was a resident of the premises. Thus, unlike *Childers v. State*, 158 Ga. App.

613, supra, there was nothing to indicate that the pocketbook was the personal belonging of a visitor. And it cannot be said that the search of defendant wife's pocketbook was illegal.

With regard to defendant wife's automobile, the police had actual knowledge that that vehicle was the property of a visitor to the searched premises. Nevertheless, a search of the vehicle was undertaken. Giving due consideration to all the circumstances that existed on the premises, we think a search of the vehicle was lawful. We realize that a person does not lose his Fourth Amendment rights when he visits the house of a friend and that a person's property, including his automobile, cannot be searched merely because he is a visitor upon searched premises. *Hawkins v. State*, 165 Ga. App. 278, supra; *Childers v. State*, 158 Ga. App. 613, supra; *Wyatt v. State*, 151 Ga. App. 207, supra. In the case sub judice, however, " '*(c)ommon prudence* dictates that the vehicle [had] so identified itself with the premises and its curtilage as to make it subject to search as part of the premises.' [Cit.]" (Emphasis supplied.) *Albert v. State*, 155 Ga. App. 99, 100 (270 SE2d 220).

As we pointed out above, the search of defendant wife's purse conducted prior to the search of the automobile was, under the circumstances, entirely lawful. See *Childers v. State*, 158 Ga. App. 613, supra. The search revealed a small amount of marijuana, a loaded .38 caliber revolver, a razor blade and a straw. Perhaps, simply finding any one or even all of such items in the actual possession of an individual would not necessarily lead to the conclusion that additional contraband would be found in his automobile. However, it must be remembered that the search of the pocketbook was not the only lawful search that was conducted on "the premises" before inquiry turned to the automobile. The police had also lawfully searched the house and had found a large quantity of marijuana therein. Considering this additional find in the house, the contents of the purse became indicative of probable major drug involvement with the occupants and established a probable connection between defendant wife and the drug-related criminal activity that was shown to exist on "the premises." "Common prudence" would indicate that an individual does not carry a small amount of marijuana *and* a loaded gun *and* a razor blade *and* a straw to pay a mere social visit upon those who also happen to have possession of a large amount of marijuana. In the exercise of "common prudence," one could also conclude that an individual who intends to sell marijuana and possibly cocaine would carry to such an illegal transaction a loaded gun and implements to facilitate the customer's sampling of such contraband.

There having been established a sufficient "connection" between defendant wife and the very drug-related criminal activities that existed on "the premises" then being lawfully searched, we hold that a

further search of her automobile pursuant to a warrant covering "the premises" was authorized. "It is clear that [defendant wife] in this case was not a mere visitor or passerby whose privacy was invaded during the execution of the warrant." *Albert v. State*, 155 Ga. App. 99, supra at 100.

5. Defendant wife contends the trial court erred in denying her motion for severance. The motion was predicated upon defendant wife's assertion that she intended to take the stand on her own behalf but could not do so without endangering her privilege not to testify against her husband.

"The grant or denial of a motion to sever is within the sound discretion of the trial court and the ruling thereon will not be disturbed unless there is an abuse of discretion. *Cain v. State*, 235 Ga. 128 (218 SE2d 856) (1975) and *Mathis v. State*, 231 Ga. 401 (202 SE2d 73) (1973). In exercising this discretion there are three elements which the trial court should consider, i.e., whether a joint trial will create confusion of evidence and law; whether there is danger that evidence implicating one defendant will be considered against another defendant despite cautionary instructions to the contrary; and whether the co-defendants will press antagonistic defenses. *Jones v. State*, 243 Ga. 584 (255 SE2d 702) (1979). The defendant seeking severance must do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing of prejudice and a consequent denial of due process." *Murphy v. State*, 246 Ga. 626, 629 (2) (273 SE2d 2).

In the case sub judice, defendant wife has not made a clear showing that actual prejudice resulted from the failure to sever. See *Gann v. State*, 175 Ga. App. 799 (1) (334 SE2d 716). No offer of proof was made as to the testimony which defendant wife would offer on her own behalf. See *Graham v. State*, 171 Ga. App. 242, 245 (2) (319 SE2d 484). It cannot be said, therefore, that the trial court erred in denying defendant wife's motion to sever. "[T]he record reflects that [she] made a knowing and intelligent exercise of [her] constitutional right not to testify." *Graham v. State*, 171 Ga. App. 242, 245 (2), supra.

*Judgment reversed in Case No. 72875. Judgment affirmed in part and reversed in part in Case No. 72876. Carley and Pope, JJ., concur.*

DECIDED DECEMBER 5, 1986 —
REHEARING DENIED DECEMBER 18, 1986 —

*George F. Peterman III*, for appellant (case no. 72875).
*Craig M. Childs*, for appellant (case no. 72876).
*G. Theron Finlayson, District Attorney, Edward D. Lukemire,*

*Assistant District Attorney*, for appellee.